SCOTT J. SAGARIA (BAR # 217981)
ELLIOT W. GALE (BAR #263326)
JOE B. ANGELO (BAR #268542)
SCOTT M. JOHNSON (BAR #287182)
**SAGARIA LAW, P.C.**
3017 Douglas Blvd., Ste. 100
Roseville, CA 95661
408-279-2288 ph
408-279-2299 fax

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| **BRIAN AVILEZ,**<br><br>                    Plaintiff,<br><br>          v.<br><br>Experian Information Solutions, Inc.;<br>CitiMortgage, Inc., Los Angeles Federal<br>Credit Union, and DOES 1 through 100<br>inclusive**,**<br><br>                    Defendants. | CASE NO.<br><br>COMPLAINT FOR DAMAGES:<br><br>1. Violation of Fair Credit Reporting Act;<br>2. Violation of California Consumer Credit Reporting Agencies Act; |

COMES NOW Plaintiff BRIAN AVILEZ, an individual, based on information and belief, to

allege as follows:

**<u>INTRODUCTION</u>**

1. This case arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), 15 U.S.C.

§ 1681e(b)) and the California Consumer Credit Reporting Agencies Act, California

Civil Code §1785.25(a). Plaintiff seeks redress for the unlawful and deceptive practices

committed by the Defendants in connection with their inaccurate, misleading, or

incomplete reporting of Plaintiff's debt included in Plaintiff's Chapter 13 bankruptcy.

2. Here Defendant CitiMortgage, Inc. is reporting an account that was included and discharged in Plaintiff's chapter 13 as charged off rather than discharged in bankruptcy.

3. Defendant Los Angeles Federal Credit Union is reporting both a balance and past-due balance on a debt that was included and discharged as part of Plaintiff's chapter 13 bankruptcy.

4. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.

5. There exists today in the United States a pervasive and fundamental misunderstanding about the long term impact filing a consumer bankruptcy has on a consumer's credit worthiness. Specifically, many consumers believe that because a bankruptcy can be reported on their credit report for ten years their credit worthiness will be ruined for the same length of time. This is not true.

6. The *majority* of consumer Debtors who file consumer bankruptcy do so to *raise* their FICO Score and remedy their poor credit worthiness.

7. It is entirely possible for consumer Debtors to have over a 700 FICO Score within as little as 12 months after filing a consumer bankruptcy (Chapter 7 or Chapter 13).

8. Creditors and lending institutions are aware of the misconception that filing a consumer bankruptcy destroys a consumer's credit worthiness for ten years.

9. In an effort to perpetuate the aforementioned bankruptcy myth, creditors intentionally and routinely ignore credit reporting industry standards for accurately reporting bankruptcies and debts included in those bankruptcies in an effort to keep consumers' credit scores low and their interest rates high.

10. Creditors know that by deviating from recognized credit reporting standards consumers will have difficulty raising their credit scores and improving their credit worthiness.

11. These credit reporting issues are most prevalent in Chapter 13 bankruptcy filings.

12. Consequently, in the United States today it is objectively worse for consumers' credit worthiness to file Chapter 13 and pay back some or all of their debt, as opposed to filing Chapter 7 liquidation where Creditors generally receive nothing.

13. This was not the intent of Congress when enacting the Fair Credit Reporting Act and the Bankruptcy Abuse Prevention and Consumer Protection Act.

## JURISDICTION & VENUE

14. Plaintiff re-alleges and incorporates herein by this reference the allegations in each and every paragraph above, fully set forth herein.

15. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1367, and 15 U.S.C. § 1681

16. This venue is proper pursuant to 28 U.S.C. §1391(b)(1).

## GENERAL ALLEGATIONS

17. Plaintiff alleges that each and every defendant data furnisher was included in Plaintiff's Chapter 13 bankruptcy filing.

18. Plaintiff alleges that each and every Defendant is familiar with credit reporting industry standards and subscribes thereto.

19. Plaintiff alleges that each and every Defendant understands that deviation from credit reporting industry standards can and often does result in denial of credit, higher interest rates, and prompts those making credit decisions to draw a more negative inference from the reported data than if the Defendant reported in accordance with the recognized industry standard.

20. Plaintiff alleges that all actions alleged herein by Defendants were done knowingly, intentionally, and in reckless disregard for credit reporting industry standards in an attempt to purposefully undermine Plaintiff's ability to reorganize and repair Plaintiff's FICO Score.

21. In the alternative Plaintiff alleges that each and every Defendant's actions was the result of reckless policies and procedures that inevitably led to inaccurate, misleading, or incomplete credit reporting.

### FICO, Inc.

22. FICO is a leading analytics software company with its principal headquarters located in San Jose California. FICO has over 130 patents related to their analytics and decision management technology, and regularly uses mathematical algorithms to predict consumer behavior including credit risk.

23. The FICO Score has become the standard measure of consumer credit risk in the United States and is used in ninety percent of lending decisions.

24. A FICO score consists of a three-digit number summarizing a consumer's credit risk or likelihood to repay a loan. FICO periodically updates its scoring models resulting in multiple FICO Score versions.

25. Base FICO Scores range from 300 to 850, while industry-specific FICO Scores range from 250-900. A higher FICO Score demonstrates lower credit risk or less likelihood of default.

26. Different lenders use different versions of FICO Scores when evaluating a consumer's credit worthiness.

27. There are 28 FICO Scores that are commonly used by lenders.

28. A consumer's FICO Score is calculated based solely on information in consumer credit reports maintained at credit reporting agencies (CRAs).

29. The three largest CRAs are Experian Information Solutions, Inc.; Equifax, Inc. and Transunion, LLC.

30. FICO does not control what information is provided on a consumer's credit report. Instead, the scoring models or algorithms are based on the premise that information provided by the CRAs is accurate and complies with credit reporting industry standards.

31. There are five key factors that a FICO Score considers: 1) Payment History 2) Amount of Debt 3) Length of Credit History 4) New Credit and 5) Credit Mix.

32. Each of the five factors is weighted differently by FICO.

33. 35% of a consumer's FICO Score relates to payment history, 30% relates to the amount of debt, 15% relates to the length of credit history, 10% relates to new credit, and the last 10% relates to a consumer's credit mix or the different types of debts reported.

34. Payment history refers to whether a consumer has paid their bills in the past, on time, late or missed payments. The more severe, recent, and frequent the late payment information, the greater the impact on a FICO Score.  Public record items such as bankruptcy, foreclosure, judgments, and wage garnishments are also considered part of a consumer's payment history.

35. In factoring the severity of delinquent payments a FICO Score considers how late the payment continues to be, how much is owed, how recently this occurred, and how many delinquent accounts exist.

36. Once a delinquent account has been remedied the longer the account stays current the more a consumer's FICO Score should increase.

37. FICO Scores are entirely dependent upon information provided by data furnishers (DFs) to CRAs.

38. The FICO scoring formula treats both Chapter 7 and Chapter 13 Bankruptcies similarly in terms of their impact on one's FICO Score. Specifically, both Chapters have the same level of severity with respect to their FICO Score and for both, FICO uses the FILING DATE to determine how long ago the bankruptcy took place.

**Metro 2**

39. The Consumer Data Industry Association is an international trade association representing the consumer credit, mortgage reporting, employment and tenant screening and collection service industries.

40. The credit reporting industry has adopted a standard electronic data reporting format called the Metro 2 format. The Metro 2 format was developed by the CDIA in an effort to universally report debts in a particular manner that is understood to be the most accurate way in which to report a debt. Specifically, Metro 2 format was designed to allow reporting of the most accurate and complete information on consumer's credit history.

41. The CDIA's Metro 2 format is the credit reporting industry standard for accurate credit reporting.

42. The credit reporting industry at large depends upon Metro 2 and the CDIA's recommendations for reporting debt accurately.

43. The CDIA is *The* expert on accurate credit reporting. In support of this allegation Plaintiff avers the following:

    a.   The CDIA offers a FCRA certificate program for all CRAs.

    b.   The CDIA offers a FCRA awareness program for all CRAs.

    c.   The CDIA offers a FCRA Certificate program for DFs.

    d.   The CDIA offers a FCRA awareness program for DFs.

e. The CDIA offers a Metro 2 Learning system to provide detailed instructions on the use of Metro 2 format to ensure understanding of the reporting guidelines for each field of the Metro 2 Format as well as the relationship between multiple fields.

f. The CDIA hosts workshops developed and authorized by Equifax, Experian, Innovis, and Transunion.

g. The CDIA developed a credit reporting resource guide for accurately reporting credit.

44. The CDIA's Metro 2 is accepted by all CRAs.

45. The credit reporting accepted industry standards for reporting metro 2 accurately are found in the CDIA's credit reporting resource guide (CRRG).

46. The CRRG outlines the industry standards for most accurately reporting debts using Metro 2.

47. **<u>The three main credit bureaus helped draft the CRRG.</u>**

48. The CRRG is not readily available to the public. It can be purchased online for $229.45.

49. Even if a buyer is ready willing and able to pay for the CRRG, the CDIA will NOT grant access to the guide unless the buyer represents an organization included in the Metro 2 Access Policy.

50. When FICO calculates credit scores the algorithms use Metro 2 information based on industry standards established by the CDIA.

51. The algorithms used by FICO in determining a consumer's credit score are premised on the Metro 2 data received comporting with the CDIA's recommendations for accurate credit reporting.

52. If the Metro 2 data received by FICO deviates from industry standards an inaccurate or incorrect FICO Score results. If the resulting FICO Score is lower a consumer will be considered a higher credit risk resulting in less favorable lending terms.

## e-OSCAR

53. E-OSCAR is the web based Metro 2 compliant system developed by Experian Information Solutions, Inc.; Equifax, Inc.; TransUnion, LLC and Innovis that enables DFs and CRAs to create and respond to consumer credit disputes.

54. When a consumer sends a dispute letter to a CRA the CRA then sends an automated credit dispute verification (ACDV) via e-Oscar to the DF.

55. The ACDV contains within it Metro 2 codes next to certain data fields associated with a credit file e.g. "Account Type" "07" (07 in Metro 2 refers to a Charge Account).

### Bankruptcy Credit Reporting Industry Standards & Consumer Information Indicator

56. When a consumer files bankruptcy certain credit reporting industry standards exist.

57. Certain Metro 2 data is regularly expected and calculated by FICO when determining a consumer's credit worthiness.

58. The Consumer Information Indicator (CII) is a critical field in the Metro 2 Format that indicates a special condition that applies to a specific consumer.

59. Under Metro 2 the CII must be reported only on the consumer to whom the information applies.

60. It is the credit reporting industry standard to report a very specific CII upon the filing of a consumer bankruptcy.

61. In the consumer bankruptcy context CII Metro 2 Code "A" denotes that a petition for Chapter 7 has been filed, is active, but no discharge has been entered.

62. CII Metro 2 Code "D" indicates that a Chapter 13 petition has been filed, is active, but no discharge entered. This is usually translated on a consumer credit report as "Wage Earner Plan" or "WEP" in the "Account Status" portion of a trade line. Such reporting alerts any potential lender that the account is no longer in a collectable status but is being handled by a Chapter 13 trustee.

63. The CII Metro 2 Code "Z" indicates that a bankruptcy petition has been filed but the chapter is undesignated/unknown.

64. The CII Metro 2 Code "E" denotes that a Chapter 7 bankruptcy has been discharged.

65. The CII Metro 2 Code "H" denotes that a Chapter 13 bankruptcy has been discharged.

66. The CII field is a critical field for consumers and directly relates to and impacts a consumer's credit worthiness.

67. The lack of a CII reported makes it appear that a consumer has not addressed outstanding debt obligations through the bankruptcy process.

68. The lack of a CII reported also suggests that creditors are free to collect against a consumer as an individual or that no stay exists to prevent *in personam* collection activity.

69. Failure to report the correct CII indicator will prompt those making credit decisions to draw a more negative inference regarding a consumer's credit worthiness.

70. Under the Fair Credit Reporting Act a bankruptcy can be reported for ten years.

71. The ten-year rule for reporting runs from the date the bankruptcy was *filed.*

72. A consumer's FICO Score is directly related to the date on which a petition is filed and acknowledged.

73. The more time that has passed since the filing of the bankruptcy, the less negative impact the bankruptcy will have on a consumer's FICO Score.

74. Failure to reference the bankruptcy filing (CII field) and or the correct petition date shall result in a lower FICO Score resulting in those making credit decisions to draw a more negative inference regarding a consumer's credit worthiness.

**Credit Reporting Industry standards for reporting balances and past due balances post discharge.**

75. If an account is included in bankruptcy the balance should be updated to $0.00 post discharge.

76. If an account is included in bankruptcy the past due balance should be updated to $0.00 post discharge.

**Plaintiffs Bankruptcy Filing**

77. Plaintiff filed for Chapter 13 bankruptcy protection on June 30, 2011 in order to reorganize and repair Plaintiff's credit worthiness and FICO Score..

78. Plaintiff's plan was confirmed on October 4, 2011.

79. **Plaintiff's bankruptcy was discharged on October 18, 2016.**

80. On October 1, 2016 Plaintiff ordered a three bureau credit report from Experian Information Solutions, Inc. to ensure proper reporting by Plaintiff's Creditors.

81. Plaintiff noticed two different trade lines on the October 1, 2016 credit report all reporting inaccurate, misleading, or incomplete information that did not comply with credit reporting industry standards.

82. In response, Plaintiff disputed the inaccurate tradelines including the CitiMortgage, Inc. and Los Angeles Federal Credit Union trade lines via certified mail with Experian Information Solutions, Inc.; Equifax, Inc.; and TransUnion, LLC on December 28, 2016 post discharge.

83. Plaintiff's dispute letter specifically put defendants CitiMortgage, Inc. and Los Angeles Federal Credit Union on notice that Plaintiff had filed for bankruptcy, and specifically requested that the CDIA guidelines be referred to in determining how to report the accounts.

84. Plaintiff also requested the account be marked disputed if the investigation disagreed with Plaintiff's assertions.

85. Plaintiff is informed and believes that each CRA received Plaintiff's dispute letter and in response sent Plaintiff's dispute to each DF via an ACDV through e-OSCAR.

86. On February 24, 2017 after the statutory time period had elapsed for Plaintiff to receive a reinvestigation report from the credit Bureaus, Plaintiff ordered a second three bureau credit report from Experian Information Solutions, Inc. for the sole purpose to ensure Plaintiff's accounts had in fact been updated.

**Inaccuracy – CitiMortgage, Inc.**

87. Plaintiff was shocked and frustrated to see that Defendant CitiMortgage, Inc. did not properly update the account but instead was reporting Plaintiff's account, beginning in 200232xxxx, as charged off with absolutely no indication whatsoever that the account had been included and discharged in Plaintiff's bankruptcy.

88. This despite the fact Plaintiff specifically put Defendant CitiMortgage, Inc. on notice regarding Plaintiff had filed bankruptcy.

**Willfulness**

89. This was not a negligent act by Defendant CitiMortgage, Inc. but instead an intentional act to purposefully undermine Plaintiff's ability to effectively restore his credit through bankruptcy.

90. Specifically, CitiMortgage, Inc. filed a proof of claim in Plaintiff's Chapter 13 verifying that the account was active.

91. At the time of Plaintiff's chapter 13 filing CitiMortgage, Inc. had not charged off the account.

92. Defendant CitiMortgage, Inc. did not update its reporting of Plaintiff's account post-bankruptcy filing and instead reported the account as charged off as opposed to included in bankruptcy.

93. Post chapter 13 discharge Defendant CitiMortgage, Inc. did not report that the account had been discharged but instead continued to report the account was charged off.

94. Post discharge CitiMortgage, Inc. still refused to acknowledge the debt as uncollectable and continued to report the account as charged off.

95. CitiMortgage, Inc. is not following industry standards and is not listing the correct consumer information indicator (CII) as the CII should have been updated to D during the pendency of Plaintiff's chapter 13 bankruptcy again updated again to H to indicate that Plaintiff received a chapter 13 discharge.

96. By indicating that the account status is charged off without noting the chapter 13 discahrge it appears that Plaintiff has failed to address this outstanding debt thus making Plaintiff less credit worthy.

97. CitiMortgage, Inc.'s reporting makes Plaintiff appear less creditor worthy because, if the CII H were reported the charged of notation would be replaced with a status notation of included and discharged in bankruptcy, or something similar.

98. Such a notation alerts lenders that Plaintiff's debt with CitiMortgage, Inc. has been included and discharged in Plantiff's bankruptcy and that the debt is not collectable.

99. Once CitiMortgage, Inc. received Plaintiff's dispute rather than acknowledge the bankruptcy CitiMortgage, Inc. noted the account as a charge off with absolutely no indication whatsoever that Plaintiff had included and discharged the debt in her Chapter 13.

100. Rather than mark the account discharged CitiMortgage, Inc. continues to report the account delinquent i.e. Charge off in hopes that Plaintiff will pay the account at some point in the future.

101. Such a scheme directly undermines the integrity of not only the bankruptcy court but also the integrity of the credit reporting system at large.

**Inaccuracy – Los Angeles Federal Credit Union**

102. Plaintiff was shocked and frustrated to see that Defendant Los Angeles Federal Credit Union did not properly update the account but instead was reporting Plaintiff's account, beginning in 43061xxxx, as owing a balance of $5,180 and a past due balance of $1,082 despite Plaintiff having received a discharge.

103. The legal status of a debt changes upon discharge.

104. Despite this Defendant refused to acknowledge the discharge and continued to report a balance AND a past due balance.

105. This despite the fact Plaintiff specifically put Defendant Los Angeles Federal Credit Union on notice regarding Plaintiff had filed bankruptcy.

**Willfulness**

106. This was not a negligent act by Defendant Los Angeles Federal Credit Union but instead an intentional act to purposefully undermine Plaintiff's ability to effectively restore his credit through bankruptcy.

107. Specifically, Los Angeles Federal Credit Union filed a proof of claim in Plaintiff's Chapter 13 verifying that the account was active.

108. Defendant, did not update its reporting of Plaintiff's account post-discharge filing and instead reported the account having both an outstanding balance and past-due balance.

109. Post discharge Los Angeles Federal Credit Union still refused to acknowledge the debt as uncollectable and continued to report that Plaintiff still owed money on the account.

110. Los Angeles Federal Credit Union is not following industry standards by reporting an active balance and past-due balance after entry of Plaintiff's chapter 13 discharge.

111. By indicating that the account has a balance and past due balance outstanding it appears that Plaintiff has failed to address this outstanding debt with Los Angeles Federal Credit Union, thus making Plaintiff less credit worthy.

112. Los Angeles Federal Credit Union's reporting makes Plaintiff appear less credit worthy because it appears that Plaintiff still owes Los Angeles Federal Credit Union money on an account that was discharged.

113. Once Los Angeles Federal Credit Union received Plaintiff's dispute rather than acknowledge the bankruptcy discharge Los Angeles Federal Credit Union noted the account as still having a balance and past due balance owed.

114. Rather than mark the account as discharged Los Angeles Federal Credit Union continues to report the account delinquent i.e. with an outstanding balance owed, in hopes that Plaintiff will pay the account at some point in the future.

115. Such a scheme directly undermines the integrity of not only the bankruptcy court but also the integrity of the credit reporting system at large

**Damages**

116. Here, Plaintiff pulled the credit report at issue at a cost of $39.95, specifically for the sole purpose of verifying that the inaccuracies were fixed.

117. As a result of the incorrect reporting, Plaintiff has suffered economic loss, diminished credit , emotional harm, and excessive stress resulting in doubt as to the effectiveness of the Bankruptcy Code and the power of this Court to preserve and perpetuate a fresh start.

118. The actions of Experian Information Solutions, Inc., CitiMortgage, Inc., and Los Angeles Federal Credit Union as alleged herein are acts in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b).

119. The actions of CitiMortgage, Inc. and Los Angeles Federal Credit Union as alleged herein are acts in violation of the Consumer Credit Reporting Agencies Act California Civil Code § 1785.25(a).

**FIRST CAUSE OF ACTION**
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681e(b))
Against Defendants and Does 1-100)

**Experian Information Solutions, Inc. – Failure to Assure Credit Reporting Accuracy.**

120.  Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

121.  Experian violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files it published and maintained concerning Plaintiff.

122.  Had Experian maintained reasonable procedures to assure maximum accuracy Experian would never have allowed Defendant CitiMortgage, Inc. and Los Angeles Federal Credit Union to report the account as described herein.

123.  As a result of Experian's violation of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including but not limited to: diminished credit, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

**Willfulness**

124.  The violations described herein by Experian were willful, specifically the Credit Bureaus including defendant Experian have intentionally and purposefully set up a system where inaccuracies are not only probable but inevitable.

125.  Experian intentionally sends consumer disputes to employees who do not live within the continental United States.

126.  This is intentionally done to hide and or subvert a consumer's ability to confront individual directly responsible for approving accurate reporting.

127.  These employees for Defendant Experian receive little to know training concerning how to accurately report consumer debt.

128.  Instead these employees are simply instructed to parrot whatever information a data furnisher provides regardless of whether or not that information is accurate.

129.  Experian employees are regularly expected to review and approve over 90 disputes per day rendering less than five minutes to review, investigate, and respond to each dispute received.

130.  Experian has intentionally setup this system in order to undermine, hide, and otherwise frustrate consumers' ability to properly dispute and correct credit reports.

131.  Experian also allowed both Data furnishers to report these accounts post discharge with ACTUAL knowledge of the discharge. Specifically, the same credit report that contains these blatant inaccuracies also reflects in the public records section that Plaintiff has

received a Chapter 13 discharge. Thus, Experian KNEW plaintiff filed and received a bankruptcy and yet somehow allowed these data furnishers to reports inaccurately and obviously outside of recognized industry standards.

132. Given that Experian literally helped draft the CRRG,  and Plaintiff specifically referenced industry guidelines in the dispute letter Experian knew that these accounts were not reporting in a manner consistent with industry standards i.e. accurate, but chose to do nothing.

133. Consequently, Defendant Experian is liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, Experian was at least negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

134. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from the CRAs in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## SECOND CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681s-2(b))
Against Defendants and Does 1-100)

**CitiMortgage, Inc. and Los Angeles Federal Credit Union –Failure to Reinvestigate.**

135. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

136. 15 USC 1681s-2(b) and 15 USC 1681i-(a)1 prohibits furnishers from providing any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate or misleading and requires a furnisher to update and or correct inaccurate information after being notified by a consumer reporting agency of a dispute by a consumer.

137. Defendant CitiMortgage, Inc. and Los Angeles Federal Credit Union violated section 1681s-2(b) by failing to conduct a reasonable investigation and re-reporting misleading and inaccurate account information.

138. The CRAs provided notice to CitiMortgage, Inc. and Los Angeles Federal Credit Union that Plaintiff was disputing the inaccurate and misleading information but CitiMortgage, Inc. and Los Angeles Federal Credit Union both failed to conduct a reasonable investigation of the information as required by the FCRA.

139. Based on Plaintiff's dispute, both CitiMortgage and Los Angeles Federal Credit Union should have known its accounts were included and discharged in Plaintiff's Chapter 13 plan of reorganization.

140. The most basic investigation would include a simple review of well-established credit reporting industry standards.

141. Plaintiff alleges both CitiMortgage, Inc. and Los Angeles Federal Credit Union did not review well established industry standards for credit reporting.

142. If CitiMortgage, Inc. and Los Angeles Federal Credit Union had reviewed such standards CitiMortgage, Inc. and Los Angeles Federal Credit Union would have seen its reporting was not in compliance and consequently inaccurate and or incomplete.

143. Such an investigation would be unreasonable.

144. Plaintiff also alleges that CitiMortgage, Inc. and Los Angeles Federal Credit Union did not investigate whether Plaintiff filed for bankruptcy, whether their accounts were included, the terms of the plan, or whether or not the terms had been approved.

145. The lack of investigation is unreasonable.

146. Plaintiff further alleges that neither DF has properly trained those directly investigating disputes on Metro 2 generally or credit reporting industry standards and as such have developed reckless policies and procedures.

**Experian Information Solutions, Inc. – Failure to Reinvestigate Disputed Information.**

147. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

148. After Plaintiff disputed the accounts mentioned above, Experian was required to conduct a reasonable investigation and to delete any information that was not accurate under 15 USC 1681i-(a)1.

149. Experian failed to conduct a reasonable investigation and failed to correct the misleading and or inaccurate statements on the account within the statutory time frame or at all.

150. Plaintiff alleges that Experian has its own independent duty to conduct a reasonable investigation 15 USC 1681i-(a)1.

151. Experian is not a passive entity bound to report whatever information a DF provides.

152. Plaintiff alleges that Experian is readily familiar with Metro 2 guidelines and credit reporting industry standards given that Experian helped draft said guidelines.

153. In fact, Experian sponsors and authorizes workshops hosted by the CDIA that teach the following to DFs:

    a. Do not report delinquencies post petition pre discharge in the payment history section regardless of Chapter 7 or Chapter 13. Instead report the Metro 2 indicator D.

    b. In Chapter 13 cases do not report past due balances post confirmation.

    c. In Chapter 13 cases do not report balances that are inconsistent with the terms of the Chapter 13 plan.

    d. In Chapter 13 cases do not report monthly payments that are inconsistent with the terms of the Chapter 13 plan.

    e. The above reporting is the correct and accurate way to report debts included in consumer bankruptcy filings.

154. Given the aforementioned, Plaintiff alleges that Experian can and does suppress inaccurate information from being reported when DFs provide inaccurate information.

155. Experian can and does instruct DFs on how to properly report certain accounts from time to time upon request from the DF.

156. Experian failed to conduct a reasonable investigation because any basic investigation would have uncovered that certain DFs were not following credit reporting industry standards.

157. Experian would have known that Plaintiff filed for Chapter 13 based on multiple other accounts reporting as much.

158. Experian would have known that Plaintiff's plan had been confirmed based on multiple other accounts reporting as much.

159. Experian would have known that failure to report a CII given that a Chapter 13 was filed did not comport with industry standards.

160. In fact Experian KNEW plaintiff received a discharge because its own public records section reflects that Plaintiff filed and received a chapter 13 discharge.

161. Experian therefore did not do the most basic investigation regarding credit reporting industry standards otherwise the aforementioned would have been uncovered.

162. Experian intentionally, willfully or with reckless disregard for Plaintiff's accuracy did no investigation whatsoever given that Experian's general policy is to simply parrot whatever information a data furnishers sends. Consequently, such policy and procedure inherently leads to inaccurate information being reported and therefore such an investigation is wholly unreasonably and reckless i.e. willful.

### THIRD CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(2)(A))
Against Defendants and Does 1-100)

**Experian Information Solutions, Inc. – Failure to send dispute**

163. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein and pleads in the alternative

164. Experian violated 15 U.S.C. § 1681i(a)(2)(A) by failing to provide Defendants CitiMortgage, Inc. and Los Angeles Federal Credit Union with all the relevant information regarding Plaintiff's disputes.

165. As a result of Experian's violation of 15 U.S.C. § 1681i(a)(2)(A), Plaintiff suffered actual damages, including but not limited to: damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

166. The violations by Experian were willful, given the previous allegations set forth, rendering each of the Defendants individually liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.

167. In the alternative, Experian was negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

168. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

### FOURTH CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(4))
Against Defendants and Does 1-100)

**Experian Information Solutions, Inc. – Failure to Review and Consider All Relevant Information.**

169. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

170. Experian violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.

171. As a result of Experian's violation of 15 U.S.C. § 1681i(a)(4), Plaintiff suffered actual damages, including but not limited to , damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

172. The violations by Experian were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.

173. In the alternative, Experian was negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

174. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

### FIFTH CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(5)(A))
Against Defendants and Does 1-100)

**Experian Information Solutions, Inc. – Failure to Delete Disputed and Inaccurate Information.**

175. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

176. Experian violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or  modify the item of information upon a lawful reinvestigation.

177. As a result of Experian's violation of 15 U.S.C. § 1681i(a)(5)(A), Plaintiff suffered actual damages, including but not limited to, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

178. The violations by Experian were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.

179. In the alternative, Experian was negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

180. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from the CRAs in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

<u>**SIXTH CAUSE OF ACTION**</u>
(Violation of California Consumer Credit Reporting Agencies Act
California Civil Code § 1785.25(a) Against Defendants and Does 1-100)

**CitiMortgage, Inc. and Los Angeles Federal Credit Union – Reporting Inaccurate Information to Experian Information Solutions, Inc..**

181. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

182. In the regular course of its business operations, both CitiMortgage, Inc. and Los Angeles Federal Credit Union routinely furnish's information to credit reporting agencies pertaining to transactions between Defendants and Defendant's consumers, so as to provide information to a consumer's credit worthiness, credit standing and credit capacity.

183. CitiMortgage, Inc. and Los Angeles Federal Credit Union intentionally and knowingly reported misleading and inaccurate account information to the CRAs that did not comply with well-established industry standards. In an intentional attempt to have Plaintiff pay on a debt that was properly listed and discharged through Chapter 13 of the bankruptcy code.

184. Plaintiff alleges that CitiMortgage, Inc. and Los Angeles Federal Credit Union re-reported the information contained herein in violation of California Civil Code § 1785.25(a).

185. Plaintiff also alleges that CitiMortgage, Inc. and Los Angeles Federal Credit Union had reason to know that the information reported on Plaintiff's accounts were misleading, inaccurate, incomplete, and did not comport with well-established credit reporting industry standards.

186. Plaintiff alleges that CitiMortgage, Inc. and Los Angeles Federal Credit Union had reason to know that by not following well-established industry standards lenders will draw a more negative inference with respect to Plaintiff's credit worthiness.

187. Plaintiff alleges that the bankruptcy notices, disputes letters from all three credit reporting agencies, the consumer data industry resource guide, and results of its investigation should have provided notice to CitiMortgage, Inc. and Los Angeles Federal Credit Union of its misleading and inaccurate reporting as well as being noticed of the plan confirmation and proof of claim forms sent by the U.S. Bankruptcy Court.

188. CitiMortgage, Inc. and Los Angeles Federal Credit Union failed to notify Experian Information Solutions, Inc. that the information Defendant re-reported was inaccurate before the end of 30 business days, in violation of California Civil Code § 1785.25(a).

189. CitiMortgage, Inc. and Los Angeles Federal Credit Union's communications of false information, and repeated failures to investigate, and correct their inaccurate information and erroneous reporting were done knowingly, intentionally, and in reckless disregard for their duties and Plaintiff's rights.

190. As a direct and proximate result of CitiMortgage's and Los Angeles Federal Credit Union's willful and untrue communications, Plaintiff has suffered actual damages including but not limited to inability to properly reorganize under Chapter 13, reviewing credit reports from all three consumer reporting agencies, time reviewing reports with counsel, sending demand letters, diminished credit score, emotional distress, frustration, and such further expenses in an amount to be determined at trial. Wherefore, Plaintiff prays for judgment as hereinafter set forth.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1. For preliminary and permanent injunctive relief to stop Defendants from engaging in the conduct described above;

2. Award statutory and actual damages pursuant to 15 U.S.C. § 1681n and California Civil Code § 1785.31;

3. Award punitive damages in order to deter further unlawful conduct pursuant to 15 U.S.C. § 1681n; and California Civil Code § 1785.31

4. Award attorney's fees and costs of suit incurred herein pursuant to 15 U.S.C. § 1681n & o; California Civil Code § 1785.31;

5. For determination by the Court that Creditor's policies and practices are unlawful and in willful violation of 15 U.S.C. § 1681n, et seq.; and

6. For determination by the Court that Creditor's policies and practices are unlawful and in negligent violation of 15 U.S.C. § 1681o.

**SAGARIA LAW, P.C.**

Dated: May 23, 2017          */s/ Elliot Gale, Esq.*
                                               Scott Sagaria, Esq.
                                               Elliot Gale, Esq.
                                               Attorneys for Plaintiff

### <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands trial of this matter by jury.

**SAGARIA LAW, P.C.**

Dated: May 23, 2017          */s/ Elliot Gale, Esq.*
                                               Scott Sagaria, Esq.
                                               Elliot Gale, Esq.
                                               Attorneys for Plaintiff